UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA LOCAL 3047, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | **Electronically Filed** |
| v. | ) ) | CASE NO. 3:15-cv-00066-DJH |
| HARDIN COUNTY, KENTUCKY, et al., | ) ) | |
| Defendants. | ) ) | |

# DEFENDANTS' RESPONSE MEMORANDUM
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants, Hardin County, Kentucky, and its elected officials sued in their official capacity, respectfully file this Response Memorandum in Opposition to the Plaintiff Unions' Motion for Summary Judgment. Defendants file this Response pursuant to the Court's Scheduling Order of February 27, 2015 (Doc 6) ("Scheduling Order").

Pursuant to the Scheduling Order, Defendants are also filing their own Motion for Summary Judgment simultaneously with this Response. Defendants' Memorandum in Support of Summary Judgment ("MSJ Memo") explains in more detail why Defendants, not the Plaintiffs, are entitled to summary judgment in this matter.

To minimize duplication between its Memorandum in Support of Summary Judgment and this Response, Defendants endeavor here to succinctly address the specific assertions made by Plaintiffs in their Memorandum. Defendants respectfully ask the Court to consult Defendants' MSJ Memo for a fuller discussion of the issues and legal authorities raised by the parties' respective summary judgment motions.

## I. The National Labor Relations Act (NLRA) Does Not Preempt State or Local "Right to Work" Laws.

Plaintiffs' Memorandum fails to show that the National Labor Relations Act ("NLRA"), 29 U.S.C. § 141 *et seq.* preempts Hardin County's Ordinance 300, Series 2014 ("Ordinance 300"). Plaintiffs assert or imply that the NLRA preempts the field of labor law regulation, in general, and "right to work" laws in particular. The NLRA does regulate many aspects of labor relations. It does not, however, preempt the entire field of labor relations, or preempt the regulation of "right to work" laws.

The NLRA contains no general preemption clause. *Chamber of Commerce v. Brown*, 554 U.S. 60, 65 (2008). Further, the NLRA does not create an "implied" preemption of "right to work" laws. Section 8(3) of the NLRA provides: "That nothing in this Act (the NLRA) or any other statutes <u>of the United States</u> shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein." 29 U.S.C. § 158(a)(3)(underlining added). The plain language of Section 8(a) is careful to place no restriction on State or local authority to "preclude" mandatory union membership. The U.S. Supreme Court explains that Section 8(3) of the NLRA merely "disclaimed a national policy hostile to union shop" or "other forms of union security agreement(s)." *Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Bd.,* 336 U.S. 301, 307 (1949).

In 1947, Congress passed the Taft-Hartley amendments to the NLRA. The Taft-Hartley amendments outlawed "closed shop." A "closed shop" agreement required that employees be union members *before* they were eligible for hire. A "union shop" agreement requires that employees become union members *after* they are hired. Plaintiffs assert that the Taft-Hartley amendments had a "preemptive effect" on the regulation of "right to work" laws. According to

the Plaintiffs, Congress then created a "carefully limited" exception to this preemption by adding Section 14(b) to the NLRA. Plaintiffs' Memorandum, p. 7. This is not what happened.

Section 14(b) states that the NLRA cannot be "construed as authorizing" union contracts that mandate union membership if such agreements are "prohibited by State or Territory law." In *Retail Clerks Intern. Ass'n., Local 1625, AFL-CIO v. Schermerhorn,* 375 U.S. 96 (1963), the U.S. Supreme Court explained that the NLRA did not, and does not, preempt regulation of "union shop" agreements. Congress added Section 14(b) merely to protect against any assertion that the Taft-Hartley amendments created such a preemption.

The issue in *Schermerhorn* was whether the National Labor Relations Board ("NLRB") had jurisdiction over State "right to work" laws. The Supreme Court concluded that the NLRB possessed no jurisdiction over "right to work" laws. In reaching this decision, the Court explained the reason Congress added Section 14(b) of the NLRA. Contrary to the argument in Plaintiffs' Memorandum, the *Schermerhorn* Court explained:

> "In other words, Congress undertook pervasive regulation of union-security agreements, raising in the minds of many whether it thereby preempted the field, . . . That is one reason why a section, which later became Section 14(b) appeared . . . as making clear and unambiguous the purpose of Congress not to preempt the field."

*Schermerhorn,* 375 U.S. at 100-101, (Emphasis added). The Court went on to state unequivocally:

> "It was never the intention of the National Labor Relations Act . . . to preempt the field in this regard so as to deprive the States of their powers to prevent compulsory unionism."

*Schermerhorn,* 375 US. at 102.

The NLRA neither forbids nor preempts State or local "right to work" laws. Therefore, Hardin County is free to enact its Ordinance 300.

## II. Ordinance 300 is Included Within the Scope of "State Law" Within the Meaning of NLRA 14(b).

Hardin County's authority to adopt a "right to work" ordinance is confirmed, not contracted, by Section 14(b) of the NLRA. Section 14(b) confirms that "nothing in this Act" (NLRA) makes valid any "union shop" agreement "prohibited by State or Territorial law." 29 U.S.C. § 164(b). Plaintiffs contend that Section 14(b)'s reference to "State" law excludes the laws of political subdivisions of the States, such as Hardin County. Exactly the opposite is true.

In *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597 (1991), the U.S. Supreme Court addressed whether a federal statute's grant of authority to the States to legislate in a certain field, that would otherwise be preempted by federal law, conferred authority on the State's political subdivisions, such as cities and counties, to legislate in the same field. The Supreme Court concluded that if States are empowered to legislate in a particular field so are their political subdivisions. *Id.* at 607-607.

*Mortier* involved the Federal Insecticide Fungicide and Rodenticide Act (FIFRA), which establishes a comprehensive federal scheme for regulating pesticide use and sale. The FIFRA authorized "States," however, to regulate pesticides in a manner not prohibited by the FIFRA. The town of Casey, Wisconsin, passed an ordinance regulating pesticide use. A user of pesticides, Ralph Mortier, challenged the ordinance as preempted by the FIFRA. Just like the Plaintiffs in the case at bar, Mortier charged that the FIFRA preempted the town's ordinance since the town's ordinance was not a "State law." The U.S. Supreme Court ruled that the laws and ordinances of a State's political subdivision are "State laws" for purposes of preemption analysis. *Mortier,* 501 U.S. at 605, 607-8. Therefore, there was no preemption of the local ordinance.

The Supreme Court announced that the federal statute's grant of authority to the "States" *included* their political subdivisions. The Court explained:

> "The principle is well settled that local 'governmental units are created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them . . . in [its] absolute discretion. (Citations omitted.) The exclusion of political subdivisions cannot be inferred from the express authorization to the 'State[s]' because political subdivisions are components of the very entity the statute empowers."

*Id.* at 607-08.

Hardin County is a political subdivision of the State of Kentucky. *See, Lexington-Fayette Urban Cnty. Gov't. v. Smolcic,* 142 S.W.3d 128, 133 (Ky. 2004) ("Counties are unincorporated political subdivisions of the state . . . ."). Where a federal statute authorizes a State to act, this federal statute authorizes its political subdivisions to act. *City of Columbus v. Ours Garage & Wrecker Service, Inc.,* 536 U.S. 424, 434 (2002); *Mortier,* 501 U.S. at 107. Accordingly, since Section 14(b) protects States' rights to adopt "right to work" laws, Section 14(b) protects political subdivisions, like Hardin County's, rights to adopt "right to work" laws.

Furthermore, the U.S. Supreme Court has already rejected the same argument Plaintiffs advance against treating Hardin County's Ordinance 300 as a "State" law. Plaintiffs' Memorandum points to the two provisions in the NLRA unrelated to "right to work." Plaintiffs' Memo, p. 6. Section 14(a) references "local or national law" when defining who need not be treated as an "employee" under the NLRA. (29 U.S.C. § 164(a)). Section 2(2) of the Act excludes from "employers" covered by the NLRA the federal government and agencies, as well as States or political subdivisions thereof." The Plaintiffs represent that this is evidence that the term "State" law in Section 14(b) "refers to laws applying at the state-level." Plaintiffs' Memo, p. 6. Both *Mortier* and *City of Columbus,* cited above, specifically reject this argument.

*City of Columbus* involved the Interstate Commerce Act ("ICA"). 49 U.S.C. § 14501(c)(1). The ICA referred to "State" law when it excluded safety regulations from federal preemption but used the term "States and their political subdivisions" in a parallel section that excluded a narrow area of tow truck regulation from federal preemption. Nevertheless, the Supreme Court ruled that these distinctions within the statute did *not* warrant the conclusion that Congress intended to exclude political subdivisions from exercising the power granted only to the "States." *City of Columbus,* 546 U.S. at 434.

The NLRA's use of the terms "local" and "political subdivision" elsewhere in the NLRA presents a far less compelling circumstance than the language of the ICA analyzed in *City of Columbus.* The NLRA refers to "local" and "States and their political subdivisions" in the context of who is treated as an "employee" for purposes of coverage under the NLRA. These sections of the NLRA have *nothing* to do with "right to work" or the scope of "State" law for the purpose of regulating "right to work." The situation is more like what the U.S. Supreme Court addressed in *Mortier:*

> "The term 'State' is not self-limiting since political subdivisions are merely subordinate components of the whole. The scattered mention of political subdivisions elsewhere in FIFRA does not require their exclusion here."

*Mortier,* 501 U.S. at 612. The same is true for the NLRA.

Section 14(b) of the NLRA, indeed, protects the right of States to enact "right to work" laws from any claim of federal preemption. This protection *includes* political subdivisions of Kentucky, like Hardin County. It does not exclude political subdivisions, as asserted by the Plaintiffs. In the words of the U.S. Supreme Court, federal statutes protecting "State" laws from federal preemption "should be read to preserve, not preempt, the traditional prerogative of the States to delegate their authority to their constituent parts." *City of Columbus,* 536 U.S. at 429.

**III.  Legal Authorities Cited by Plaintiffs Fail to Establish Preemption of Ordinance 300.**

None of the cases cited in Plaintiffs' Memorandum demonstrate that the NLRA preempts Ordinance 300.  Plaintiffs rely heavily on *dicta* from a footnote in *Oil Chemical & Atomic Workers v. Mobil Oil Corp.,* 426 U.S. 407, 413 n. 7 (1976). *Mobil Oil Corp.* is a decision addressing whether the Texas "right to work" law governs sailors who spent the majority of their workdays on the high seas in the Atlantic Ocean. Some of the sailors were hired in Texas. They sailed oil tankers between New York and Texas. The issue in the case was whether Texas' "right to work" law applied to the sailors' union contract, *Id.* at 413. The Court held that the employees' predominant job site should determine the applicability of a State's "right to work" laws. *Id.* at 418. Since the primary job site of these employees' work was the high seas, Texas law did not apply. *Id.*

*Mobil Oil* established no rule concerning federal preemption of "right to work" laws. No local "right to work" law was involved in *Mobil Oil.* Plaintiffs point to its footnote 7.  Plaintiffs' Memo, pp.5, 6, & 11. *See, Mobil Oil,* 426 U.S. at 413, n. 7.  The footnote references that Section 14(b) protects from preemption every "right to work" law. Defendants do not disagree since "State" law includes the local political subdivisions. *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 607-8 (1991) ("The exclusion of political subdivisions cannot be inferred from the express authorization to the 'State[s]' because political subdivisions are components of the very entity the statute empowers.").

The author of the *Mobil Oil* opinion, Justice Marshall, was unlikely to have in view whether "States" included political subdivisions, since no political subdivision was involved in the *Mobil Oil* case. As authority for the role of Section 14(b), footnote 7 cites *Retail Clerks Intern. Ass'n., Local 1625, AFL-CIO v. Schermerhorn,* 375 U.S. 96, 103 (1963), *Retail Clerks v. Schermerhorn,* which undermines rather than supports the Plaintiffs' position.

Footnote 7 also references *Kentucky State AFL-CIO v. Puckett,* 391 S.W.2d 360 (1965), discussed below, with a *"Cf"* citation. Since *Mobil Oil* concerns Texas' "right to work" law and seamen sailing in the Atlantic Ocean, citation of *Puckett* can be nothing more than *dicta.* It cannot support Plaintiffs' argument on preemption of Ordinance 300, or the continued validity of *Puckett.*

Plaintiffs rely heavily upon *Kentucky State AFL-CIO v. Puckett,* 391 S.W.2d 360 (1965). *Puckett* predates by decades the U.S. Supreme Court decisions in *Mortier* (1991) and *City of Columbus* (2002). Therefore, the *Puckett* court could not know, and failed to understand without the benefit of these U.S. Supreme Court cases, the *Mortier* and *City of Columbus* rule on the State's political subdivisions' ordinances as "State laws" for preemption purposes. *See City of Columbus,* 536 U.S. at 429. This led the Court of Appeals of Kentucky to erroneously conclude that Section 14(b)'s reference to "State" law excluded, rather than included, the ordinances of political subdivisions. *Puckett,* 391 SW2d at 362. Accordingly, *Puckett's* logic and conclusion are now completely undermined by *Mortier* and *City of Columbus.*

Furthermore, *Puckett* was decided under the inaccurate "opinion" that permitting local "right to work" laws would undermine a federal policy against more variation in the status of compulsory unionism than would otherwise arise from 50 States reaching different conclusions about "right to work." No such federal policy of uniformity exists.

"Right to work" laws do not apply on federal lands (military bases, etc.) even when they are located in "right to work" jurisdictions. *See Lord v. Local Union No. 2088, International Brotherhood of Elec. Workers, AFL-CIO,* 646 F.2d 1057, 1062 (5th Cir. 1981). Native American Indiana tribes may adopt "right to work" ordinances applicable to their lands, even though their

lands may be in the midst of a non-"right to work" jurisdiction. *See NLRB v. Pueblo of San Juan,* 276 F.3d 1186 (10th Cir. 2002).

Finally, the existence of "union shop" in any particular unionized workplace depends, foremost, on whether a "union shop" agreement has been negotiated between the union and the employer and incorporated into the parties' collective bargaining agreement for that particular worksite. If an employer does not agree to a "union shop" at a particular worksite, the employees remain free to determine for themselves whether they wish to join the union. This is true in States without "right to work" laws. Accordingly, "Union shop" is always a workplace-by-workplace matter, not merely geographic jurisdiction matter.

Plaintiffs also cite a decision from the U.S. District Court in New Mexico, which invalidated a municipal "right to work" ordinance, *New Mexico Federation of Labor v. City of Clovis,* 735 F.Supp. 999 (D.N.M. 1990). The *City of Clovis Court,* unfortunately, is led astray by *Kentucky State AFL-CIO v. Puckett.* Plaintiffs cite *City of Clovis* for the same inaccurate interpretation of "State law," as used in Section 14(b), that is advanced in *Puckett* but undermined by *Mortier* and *City of Columbus.* Plaintiff's Memo, p. 6-7. The *City of Clovis* decision also relies upon the false impression that federal policy on "right to work" jurisdictions seeks some level of uniformity. All of this is incorrect, as discussed above.

Finally, Plaintiffs misapply *NLRB v. Pueblo of San Juan,* 276 F.3d 1186, 1197 (10th Cir. 2002). Plaintiffs' Memo, p. 7. The Tenth Circuit in *Pueblo of San Juan* rejects a preemption challenge to a local "right to work" ordinance. Some of the legal principles involved are unique to Indian tribes. The Appeals Court's understanding of principles involved in NLRB preemption of "right to work" laws, however, support Hardin County, not the Plaintiffs.

Pueblo of San Juan is an Indian tribe located in New Mexico. The tribal council enacted a "right to work" ordinance, and entered into a lease which included "right to work" provisions. The NLRB and a local union sued the tribe in the United States District Court of New Mexico, asserting that the NLRA preempted the ordinance. The District Court granted summary judgment in favor of the tribe. The NLRB and the union appealed. The Court of Appeals concurred that the NLRA did not preempt the ordinance because the Court recognized that the NLRA creates no general preemption of "right to work" laws. Completely contrary to the characterization of *NLRB v. Pueblo of San Juan* set out in Plaintiffs' Memorandum, the federal Court of Appeals rules:

> "What Congress has not taken away by Section 8(a)(3) it need to give back (by Section 14(b)) in order for the tribe to continue to have authority to pass a right-to-work law, Although the Supreme Court has characterized Section 8(a)(3) as `articulat(ing) a national policy that certain union-security agreements are valid <u>as a matter of federal law,</u> the Court has also made it clear that . . . Section 8(a)(3) left the States free to pursue their own more restrictive policies in the matter of union-security agreements."

(internal citations omitted; underlining added). *Id. at 1197-8.* The Tenth Circuit went on to point out from *Retail Clerks Intern. Ass 'n., Local 1625, AFL-CIO v. Schermerhorn,* 375 U.S. at 101, that Congress only enacted Section 14(b) of the NLRA "to 'mak[e] clear and unambiguous the purpose of Congress not to preempt the field.'" *Id.*

Far from supporting the Plaintiffs' version of an NLRA that broadly preempts "right to work" laws, then creates a "limited exception" for "State and Territorial law" with Section 14(b), *NLRB v. Pueblo of San Juan* teaches the opposite. It makes clear that Section 8(a)(3) bars only federal law ("nothing in this Act, or in any other statute of the United States") from prohibiting compulsory unionism. The NLRA forbids or preempts no other level of government from doing so: not Indian tribes, and not county governments, like Hardin County, Kentucky.

**IV.    "Hiring Hall" and "Dues Check-Off" Provisions Ancillary to "Right to Work" Ordinance.**

Plaintiffs also challenge Ordinance 300's regulation of "Hiring Hall" and "Dues Check-off" agreements. These provisions support the core purpose of Ordinance 300. The "Dues Check-off" provisions governing deductions "for union dues, fees, assessments, and other charges" will free the working people of Hardin County to choose whether they wish to discontinue a wage deduction for union dues more often than a narrow window in time once a year. The "Hiring Hall" provisions will secure for Hardin County citizens, who desire to obtain employment in the construction industry, access to all construction jobs within the county without facing real or perceived coercion or intimidation due to a requirement that they first go to a "Union Hall" to seek "to be recommended, approved, referred, or cleared by or through a labor organization." These provisions, however, enhance rather than secure the primary benefit of Ordinance 300, which is freedom from compulsory unionism.[1]

Plaintiffs challenge these ancillary provisions as also preempted by the Act, although they are identical to ancillary provisions presently enforced in the State of Idaho. *See* I.C. § 44-2003(5) (no requirement of hiring hall referral); I.C. § 44-2004(1) (dues deduction authorization may be revoked at any time by written notice). Other States, including Iowa and Wisconsin, have also adopted similar (albeit not identical) ancillary provisions that are currently enforced. *See* Iowa Code Ann. § 731.5 (revocation of dues deduction on 30 days' written notice); W.S.A. 111.06(1)(i) (revocation of dues deduction on 30 days' written notice).

Neither the NLRA nor the LMRA expressly preempt either the "Hiring Hall" or "Dues Check-off" regulations found in Ordinance 300. *Chamber of Commerce v. Brown,* 554 U.S 60,

---

[1] In candor with the Court, the questions of federal labor law preemption are closer than for the "right to work" provisions of Ordinance 300. However, Ordinance 300 contains a severability clause at Section 13. Accordingly, should any of the ancillary provisions of Ordinance 300 be found to be preempted, the remaining provisions should remain in full force and effect. The "hiring hall" provision is found at Section 4(E) of Ordinance 300. The "dues check-off" is found at Section 5.

65 (2008) (The NLRA contains no express preemption clause.) Furthermore, there is a presumption against preemption. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) ("consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law".). In order for this Court to find that the NLRA or the LMRA preempt Ordinance 300's regulation of "hiring halls" and "dues check-off" agreements, the Court will have to find an "implied" preemption.

Defendants respectfully submit that no implied preemption – whether field or conflict – exists here. For reasons discussed below, "Dues Check-off" and "Hiring Hall" activities impact post-employment relationships between employer-employee-union. Therefore, field preemption is foreclosed by the inclusion of Section 14(b) of the Act, which made "clear and unambiguous the purpose of Congress not to preempt the field." *Schermerhorn,* 375 U.S. at 102. Conflict preemption only occurs in two circumstances. First, conflict preemption may be found if it would be impossible to comply with both the State law and the federal law. Second, conflict preemption may be found if a State law interferes with the goals of a federal law. *Gade v. National Solid Waste Management Ass'n,* 505 U.S. 88, 98 (1992). Neither the "Hiring Hall" provision nor the "Dues Check-off" provision are subject to conflict preemption because they may be read consistently with federal law and do not interfere with federal legislative intent.

### A. Dues Check-Off Provision.

It is possible to comply with both Ordinance 300 and Labor Management Relations Act ("LMRA") § 302(c)(4). The LMRA provides that dues check-off authorizations "shall not be irrevocable <u>for a period of more than</u> one year, or beyond the termination date of the applicable collective bargaining agreement, <u>whichever occurs sooner</u>." 29 U.S.C. § 186(c)(4) (emphasis added). It is clear that the LMRA provides only a maximum – and not a minimum – duration that a dues deduction authorization may remain irrevocable. Ordinance 300 merely provides that a

dues check-off authorization may be "revoked by the employee at any time," which establishes a "floor" for irrevocability to complement the LMRA's "ceiling." A dues check-off provision that can be revoked at any time complies with the LMRA minimum requirement that the dues check-off must be revocable <u>at least</u> once a year.

It is also clear that the "Dues Check-off" provision does not interfere with federal legislative intent. Courts have long recognized that Section 302 of the LMRA was enacted in an attempt to prevent bribery of unions by management. *Arroyo v. United States,* 359 U.S. 419, 425-26 (1959) (citing legislative history and confirming that Section 302 was "concerned with corruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control"). Ordinance 300 does nothing to encourage or allow prohibited bribery, nor does Ordinance 300 do anything to undermine the limited exceptions provided by Section 302(c) for the payment of union dues by those who expressly authorize their deduction. In fact, Ordinance 300 actually supports § 302(c)(4) by making dues deduction authorizations more frequently revocable.

In short, because there is no direct conflict between the federal law's "ceiling" and the Ordinance's "floor," and because there is no conflict between the intent of the federal law and the Ordinance, there can be no implied preemption.

In candor with the Court, Plaintiffs' Memorandum cites cases <u>from other Circuits</u> finding that various non-federal regulations of "dues check-off" are preempted by the NLRA and the LMRA. One of these cases, *SeaPAK v. Industrial Technical and Professional Employees,* 300 F. Supp. 1197, (S.D. Ga. 1969) *aff'd* 423 F.2d 1229 (5th Cir. 1970) *aff'd* 400 U.S. 985 (1971) was affirmed by the U.S. Supreme Court, but without opinion, so the grounds for the

Court's finding of preemption and their application to ordinance 300 are not known. For the reasons set out above, Defendants ask this Court to chart a different course than preemption ruling made outside of the Sixth Circuit.

**B. "Hiring Hall" Provision.**

With regard to the "Hiring Hall" provision, Plaintiffs rely upon a U.S. District Court in Oklahoma's rejection of an Oklahoma "right to work" statute that contained a "hiring hall" provision similar to Ordinance 300. The Oklahoma decision is *Local 514, Transport Workers v. Keating,* 212 F.Supp. 2d 1319 (E.D. Okla. 2002). *Local 414* found the "Hiring Hall" provision in the Oklahoma statute preempted because the mandatory union referrals the statute prohibited occurred before the employment relationship began.

The Oklahoma District Court reasoned that the right of States to prohibit compulsory unionism after employment ("union shop") was the only aspect of the employee-union relationship that the NLRA did not preempt. Under Section 8(a)(3) and Section 14(b) of the NLRA, compulsory unionism can occur only after employment begins. *Local 514, Transport Workers v. Keating,* 212 F.Supp. 2d at 1327 ("the laws section 164(b) [Sec. 14(b) of the NLRA] allows States to enact do not relate to the hiring process, but rather, are related to the 'post-hiring employer-employee-union relationship') (citation omitted). The *Local 514* decision ignores the reality of the situation.

"Hiring hall" arrangements only occur in the construction industry. Union referrals are made for the day, the week, the month, the construction season, etc. Construction employment is often a "revolving door." The line between the "hiring process" and "post-hiring" is a continuum. By forcing individuals to present themselves to a union and be referred through a union hall, it is inherently coercive and debilitating to employees' freedom of choice. As a practical matter, *required* union referrals lead to pressure to join and pay union dues. Mandatory

-14-

union referrals are inherently inconsistent with truly voluntary union membership. Therefore, Hardin County's right to prohibit post-employment compulsory unionism extends to prohibiting mandatory union referrals before employment. The grounds for preemption suggested in *Local 514, Transportation Workers v. Keating* do not match with the realities of the "hiring hall" situation.

Notably, rules of statutory construction dictate that, where two laws can coexist, the Court should adopt a construction of the Ordinance which will uphold its validity as opposed to one which will render it void by reason of federal preemption. *See, e.g., Ruckelhaus v. Monsanto Co.,* 467 U.S. 986, 1018 (1984). Plaintiffs have relied on non-binding caselaw from other federal courts, all suggesting that hiring hall regulations are preempted by federal law. *See, e.g., Local 514* (citing cases). However, Defendants are aware of no authority in the Sixth Circuit or the U.S. Supreme Court (and Plaintiffs have cited none) that directly holds that the right to prohibit exclusive hiring hall arrangements is preempted by federal labor law. Accordingly, this is a matter of first impression in the Sixth Circuit, and the Court is encouraged to consider the issue from a new perspective. As stated previously, should any aspect of Ordinance 300 be determined to be preempted, the remainder of the Ordinance should remain in full force and effect pursuant to the Ordinance's Severability clause. Ordinance 300, Section 13.

## CONCLUSION

For the reasons stated above, the National Labor Relations Act does not preempt Hardin County's Ordinance 300. According, Plaintiffs' Motion for Summary Judgment must be denied.

Respectfully submitted,

/s/ John T. Lovett
John T. Lovett
jlovett@fbtlaw.com
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
Telephone: (502) 589-5400
Facsimile: (502) 581-1087

Jason Michael Nemes
jnemes@fmhd.com
FULTZ MADDOX HOVIOUS & DICKENS
101 South Fifth Street, 27th Floor
Louisville, KY 40202
Telephone: (502) 992-5045
Facsimile: (502) 588-2020

Jennifer B. Oldham
jennyo.hcao@hcky.org
Hardin County Attorney
109 E. Dixie Avenue
Elizabethtown, KY 42701-1408
Telephone: (270) 765-6726
Facsimile: (270) 737-0087

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 3rd day of April, 2015, I electronically filed the foregoing Response Memorandum with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: John T. Lovett (jlovett@fbtlaw.com); James Michael Nemes (jnemes@fmhd.com); Jennifer B. Oldham (jennyo.hcao@hcky.org); Irwin H. Cutler, Jr. (cutler@pcnmlaw.com); David Leightty (dleightty@earthlink.net); Benjamin S. Basil (basil@pcnmlaw.com); and Robert M. Colone (rmcolone@teamsters89.com).

/s/ John T. Lovett
*Counsel for Defendants*