UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA LOCAL 3047 et al., | ) ) ) ) | |
| | ) | CASE NO. 3:15-cv-66 (DJH) |
| Plaintiffs | ) ) ) | |
| v. | ) ) | |
| HARDIN COUNTY, KENTUCKY, et al. | ) ) ) | |
| Defendants | ) ) | |

*AMICUS CURIAE* BRIEF OF KENTUCKY SENATE PRESIDENT ROBERT STIVERS

Comes the Hon. Robert Stivers, President of the Kentucky Senate, by counsel, and for his amicus brief in support of the Respondents, respectfully submits the following to the Court:

**A. Introduction**

The Senate President takes the extraordinary step of filing this *amicus curiae* brief as a result of the abdication by the Kentucky Attorney General of his duty to defend Kentucky legislative enactments. The policies of the Commonwealth of Kentucky are expressed directly through the statutory enactments of the General Assembly. As will be discussed in detail below, in this instance the General Assembly expressed a clear policy to allow fiscal courts of Kentucky to regulate commerce through the enactment of the Home Rule Act. Absent an express and unequivocal preemption of that policy by the federal government, that stated policy is entitled to deference by the Court.

1

It is the position of the Senate President that developments in United States Supreme Court preemption jurisprudence, combined with changes in state law following issuance of the <u>Kentucky State AFL-CIO v. Puckett</u>, 391 S.W.2d 360, 361 (Ky.1965), have resulted in it being permissible for Kentucky counties to enact right to work legislation. The Senate President concurs with the memorandum of law on behalf of the Defendants that asserts that both <u>Wisconsin Public Intervenor v. Mortier</u>, 501 U.S. 597, 111 S.Ct. 2476 (1991) and <u>City of Columbus v. Ours Garage and Wrecker Service, Inc.</u>, 536 U.S. 424, 122 S.Ct. 2226 (2002), lead to the conclusion that a careful statutory interpretation of the Labor Management Relations Act does not result in an inference that there was a congressional intent to preempt political subdivisions of states, such as counties, from enacting right to work legislation.

The primary federal legislation that regulates private sector collective bargaining is the National Labor Relations Act (NLRA), enacted in 1935. The NLRA permits "union security agreements" – collective bargaining contracts between employers and labor organizations that require all workers covered by the contract to pay dues to the labor organization. In 1947, the NLRA was amended by the Labor Management Relations Act (also known as the Taft-Hartley Act). The Labor Management Relations Act included provisions authorizing states to pass laws prohibiting union security agreements in labor contracts, overriding the authorization in federal law.[1]

In 1965, Kentucky's highest court examined whether the City of Shelbyville had the authority to enact a right to work ordinance providing that "the right of persons to work shall not be denied or abridged on account of membership or nonmembership in, or conditioned upon payments to any labor union, or labor organization." <u>Puckett</u> at 361.

---

[1] U.S. Congressional Research Service. Right to Work Laws: Legislative Background and Empirical Research (R42575; Dec. 6, 2012), by Benjamin Collins, p.1-2.

2

The *Puckett* court addressed the question of federal preemption, specifically, "whether Congress has pre-empted the field of regulation of such union-security agreements to the extent that local political subdivisions of a state have no power to legislate in the field." *Id.* at 361-62.

The Court noted that Section 14(b) of the Labor Management Relations Act, as amended, 29 U.S.C.A. § 164(b), provides:

> Nothing in this Act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any *State* or *Territory* in which such execution or application is prohibited by *State* or *Territorial* law.

(Emphasis in *Puckett*).

Asserting that by the terms of Section 8(a)(3) of the National Labor Management Relations Act[2], Congress did intend to preempt the field of union security agreements, the *Puckett* Court further opined, however, that Section 14(b), enumerated above, made a special exception in the federal preemption that permits State and Territorial laws to prohibit union-security agreements. *Id.* at 362. The *Puckett* Court then proceeded to the question of whether the special exception for "right to work" laws extended to not only states, but also to the political subdivisions of states, like the City of Shelbyville.

On this issue, the *Puckett* Court held as follows:

> Section 14(b) makes an exception out of the otherwise full pre-emption by the Act. The exception should be strictly and narrowly construed because it represents a departure from the overall spirit and purpose of the Act. See *Thomas E. Basham Co. v. Lucas, 6 Cir., 21 F.2d 550; Walling v. Home Loose Leaf Tobacco Warehouse Co., D.C., 51 F.Supp. 914.* We think it is not reasonable to believe that Congress could have intended to waive other

---

[2]The *Puckett* Court only references Section 8(a)(3), codified as 29 U.S.C. § 158(a)(3), and does not quote its provisions. Section 8(a)(3), in relevant part, establishes workers' rights to organize and establish union election procedures, and establishes certain rules for enforcement of union security agreements.

> than to major policy-making units such as states and territories, the determination of policy in such a controversial area as that of union-security agreements. We believe Congress was willing to permit varying policies at the state level, but could not have intended to allow as many local policies as there are local political subdivisions in the nation.

*Id.* at 362.

Consequently, the Court held that the Shelbyville ordinance was invalid because it was preempted by Congress. *Id.*

As noted above, however, the combination of Supreme Court preemption jurisprudence and changes in state law following issuance of the *Puckett* decision in 1965 have largely eliminated the precedential value of *Puckett*, making it permissible for Kentucky counties to enact right to work legislation.

It is also worth noting that the "major policy-making unit" limitation referred to above was an invention of the *Puckett* Court, unsupported by any statutory language or legislative history, an imagined restriction super-imposed on the statute. Further, the Court did not entertain whether counties, rather than cities, with different powers even then, let alone the then un-imagined urban governments with populations and economies larger than many states, and most territories, would constitute sufficiently "major" policy-making units to determine policy.

The Senate President will focus the remainder of his amicus brief on the implications of the "Home Rule Act," amended by the Kentucky General in 1978 and codified at KRS 67.083, on the current powers of Kentucky counties to enact right to work ordinances.

4

B. Argument

1. **The General Assembly Granted Counties Authority to Regulate Commerce and Economic Development in the 1978 Amendments to KRS 67.083.**

In 1972, the Kentucky General Assembly enacted SB 165, codified at KRS 67.083. This act, the original "Home Rule Act," granted broad powers to the fiscal courts of Kentucky counties to act for the "health, education, safety, welfare, and convenience of the inhabitants of the county and for the effective administration of the county government[.]"[3]

The Kentucky Supreme Court, in a case that turned upon the interpretation of KRS 67.083, deemed the statute to be a "'carte blanche' authority to administer county government to the same extent as if the General Assembly had expressly granted and delegated to the fiscal court all the authority that is within the power of the General Assembly to grant to the fiscal courts of said counties." *Fiscal Court of Jefferson Co. v. City of Louisville, et al*, 559 S.W.2d 478, 481 (Ky.1977). Finding the statute to be unconstitutionally overbroad, the Court struck down the law as a violation of Section 181 of the Kentucky Constitution.[4]

Subsequent to the Court's decision in *Fiscal Court of Jefferson Co.*, the 1978 Kentucky General Assembly amended KRS 67.083 to enumerate specific authorities that it was granting to counties to perform public functions. Those powers relevant to the instant case include:

> (3)(m) Regulation of commerce for the protection and convenience of the public;
>
>   \*  \*  \*
>
> (3)(x) Promotion of economic development of the county, directly or in cooperation with public or private agencies, including the provision of access roads, land and buildings, and promotion of tourism and conventions[.]

*Id.*

---

[3] Kentucky cities were granted home rule authority in 1980, codified at KRS 82.082.
[4] The Court held that "while the General Assembly may grant governmental powers to counties it must do so with the precision of a rifle shot and not with the casualness of a shotgun blast." *Id.* at 482.

Thus, since *Puckett* was decided in 1965, the General Assembly has granted to counties the specific power to regulate regarding commerce and economic development - issues that were previously the exclusive domain of state government. This grant of authority is in recognition of the fact that the counties' needs in Kentucky vary by region, by size, and by proximity to other states, nearby cities, or transportation gateways. It is also in recognition of the fact that the counties must manage their budgets, environments, and commerce every day, or every year, and not just when the legislature is in session. Counties are vested with significant power by the state, specifically because they are uniquely constituted to exercise that power.

**2. The Powers of Counties in KRS 67.083 to Regulate Commerce and Promote Economic Development Encompass the Authority to Ban Union Security Agreements.**

After KRS 67.083 was amended in 1978 to enumerate the powers, litigation inevitably followed to test how flexibly, or rigidly, the Courts would interpret the powers delineated in the statute. In 1987, the Jefferson County Fiscal Court enacted an ordinance regulating and licensing "adult entertainment establishments and their employees." The ordinance included requirements that businesses providing nude entertainment obtain county licenses and abide by restrictions on signage, construction, and security. *C & H Entertainment, Inc. v. Jefferson Co. Fiscal Court*, 169 F.3d 1023, 1024 (6th Cir. 1999). The adult entertainment businesses challenged the ordinance on constitutional grounds, and also alleged the Fiscal Court lacked the authority to enact legislation regulating adult entertainment because KRS 67.083 did not specifically mention the regulation of adult entertainment. *Id.* at 1025.

The challenge was filed in Jefferson Circuit Court, but was removed to federal District Court by the Fiscal Court. The District Court ultimately ruled that the Fiscal Court lacked

6

authority to enact the ordinance because the statute did not specifically mention the regulation of adult entertainment establishments. *Id.* at 1024. The Fiscal Court then appealed to the United States Court of Appeals for the Sixth Circuit.

The Sixth Circuit Court of Appeals in *C & H Entertainment, Inc.* overruled the District Court's finding that the Fiscal Court was without enforcement power. The Court initially noted the following:

> KRS § 67.083 addresses "commerce" broadly, without enumerating specific types of businesses for regulation by the fiscal courts, or withholding power to regulate other types of businesses. Because the statute does not single out specific types of businesses by name, but grants the fiscal courts the general power to regulate commerce for the protection of the public, there is no reason to believe that adult entertainment establishments are not within the purview of the fiscal courts' power.

*Id.* at 1026.

The Court also cited the following excerpt from the Kentucky Supreme Court decision in *Casey County Fiscal Court v. Burke*, 743 S.W.2d 26, 27 (1988), in support of its holding that KRS 67.083 granted the fiscal court the general power to regulate adult entertainment establishments:

> [t]he purpose of KRS 67.083 is to provide counties with the necessary latitude and flexibility to finance various governmental services specified in subsection 3 while retaining the authority of the General Assembly to limit by statute local governmental activities. The legislature has enacted no such limiting statute. Any limitation cannot be implied and must be an express restriction.

The Court in *C & H Entertainment, Inc.* was careful to make clear that the fiscal court had the right to regulate adult entertainment pursuant to the powers granted under KRS 67.083 even without the 1998 General Assembly changes to the law in HB 432 which explicitly granted the authority to regulate adult venues. The lower court had interpreted the holding in *Fiscal Court of Jefferson County v. City of Louisville*, supra, that the General Assembly must confer

power upon counties "with the precision of a rifle shot and not with the casualness of a shotgun blast," as a requirement that it must use the words "adult entertainment establishment" in the Home Rule Act in order for the Fiscal Court to possess such powers. *Id.* at 1026. The Sixth Circuit responded to this ruling by countering:

> If we were to interpret *City of Louisville* to hold that all subjects of fiscal court regulation must be named specifically in the statute, then the statute would have to become a laundry list of every type of business under the sun. Furthermore, the General Assembly would be forced to amend KRS § 67.083 every time a new type of business changes the aesthetic or commercial landscape of unincorporated areas in Kentucky. Each time a fiscal court attempted to regulate pursuant to KRS § 67.083, it would face challenges that the regulated entities are not labeled "with the precision of a rifle shot." This interpretation thus requires a level of micro-management by the General Assembly that the Home Rule Act was designed to obviate.
>
> In our opinion, the *City of Louisville* case does not require such micro-management, but only that the General Assembly clearly articulate what types of powers it means to delegate. The current version of KRS § 67.083, enacted in response to *City of Louisville,* enumerates various police, planning, and regulatory powers that fiscal courts may undertake in order to govern effectively. Unlike the old version of KRS § 67.083, the current statute sets forth specific regulatory goals for fiscal courts, including planning, abatement of nuisances, and regulation to encourage economic development. We thus conclude that the concerns expressed in *City of Louisville* are not applicable under KRS § 67.083 as subsequently revised.
>
> *Id.* at 1026-27.

The Court further noted that it interpreted the <u>Burke</u> decision, *supra*, as the Kentucky Supreme Court's acceptance of the amended KRS 67.083 as passing constitutional muster. *Id.* at 1027. Consequently, the "'rifle shot' precision mentioned in <u>City of Louisville</u> does not require the General Assembly to name each type of business subject to regulation by the fiscal courts." <u>Id.</u>

8

For purposes of the instant litigation, the ruling in _C & H Entertainment, Inc._ confirms that the General Assembly has, through the 1978 amendments to KRS 67.083, enumerated in a constitutionally sufficient manner the public functions that the counties may regulate. Per that statute, the authority includes the regulation of commerce and the promotion of economic development. KRS 67.083(3)(m) & (x). The ordinance which the Defendant, Hardin County, passed in January of this year, provides that employees shall not be required, as a condition of employment, to join a union or pay dues to a union.[5] Such ordinances fit squarely within the parameters of regulation of commerce and promotion of economic development.

### 3. **States are Free to Delegate Authority to Enact Right to Work Laws to the County Fiscal Courts.**

Without question, the General Assembly has the power to enact a statewide Right to Work Act. Indeed, 25 states have done just that. Accepting that the General Assembly has such power, there is nothing within the National Labor Relations Act that would expressly preempt the General Assembly from delegating the authority to local entities through their fiscal courts.

---

[5] Section 4 of Hardin County Ordinance 300, entitled, "An Ordinance Relating to the Promotion of Economic Development and Commerce by Regulation of Certain Involuntary Payments Required of Employees in Hardin County," states the following:

No person covered by the National Labor Relations Act shall be required as a condition of employment or continuation of employment:

   (A) To resign or refrain from voluntary membership in, voluntary affiliation with, or voluntary financial support of a labor organization;

   (B) To become or remain a member of a labor organization;

   (C) To pay any dues, fees, assessments, or other charges of any kind or amount to a labor organization;

   (D) To pay to any charity or other third party, in lieu of such payments, any amount equivalent to or a pro-rata portion of dues, fees, assessments, or other charges regularly required of members of a labor organization; or

   (E) To be recommended, approved, referred, or cleared by or through a labor organization.

9

*Puckett, supra*, may or may not be correct on the issue of whether a locality can enact a right to work act prior to the enactment of the Home Rule Act.  Decided prior to 1980, the year that Kentucky cities were granted home rule authority, *Puckett* consequently did not address the additional factor of statutory delegation of state authority to a political subdivision, which is present in the instant case.  Ultimately, the enactment of the ordinance by Hardin County is an exercise of state law that, far from being preempted, is expressly sanctioned by the NLRA.

**4. Conclusion**

With passage of KRS 67.083 in 1978 granting Kentucky counties the authority to regulate commerce and promote economic development, combined with more recent United States Supreme Court rulings regarding federal preemption of regulation by political subdivisions of states, the prior 1965 ruling in *Kentucky State AFL-CIO v. Puckett* can no longer be viewed as binding precedent that operates as a bar to counties enacting right to work ordinances.  The Movant urges this court to grant the Defendants' Motion for Summary Judgment as this litigation is absent any real issue of material fact, and Defendants are entitled to dismissal of the suit as a matter of law.

Dated:  April 17, 2015

                                      Respectfully Submitted,

                                      /s/ David E. Fleenor
                                      Hon. David E. Fleenor
                                      General Counsel
                                      Hon. Vaughn Murphy
                                      Deputy General Counsel
                                      Office of the Senate President
                                      Capitol Annex, Room 236
                                      Frankfort, KY  40601
                                      Telephone:  (502) 564-3120
                                      Facsimile:  (502) 564-0456
                                      Email: david.fleenor@lrc.ky.gov
                                      Counsel for Movant

## **CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing *amicus curiae* brief were served via the electronic filing system on April 17, 2015, to all persons receiving electronic notifications in this case.

<u>/s/ David E. Fleenor</u>
David E. Fleenor, Esq.