**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

CIVIL ACTION NO. 3-15-CV-66-DJH

Electronically filed

**UNITED AUTOMOBILE, AEROSPACE AND**
**AGRICULTURAL IMPLEMENT WORKERS OF**
**AMERICA LOCAL 3047, et al.**                                    **PLAINTIFFS**

**v.**

**HARDIN COUNTY, KETUCKY, et al.**                          **DEFENDANTS**

\*      \*      \*      \*      \*      \*      \*

**BRIEF *AMICUS CURIAE* OF**
**THE KENTUCKY STATE AFL-CIO**
**IN SUPPORT OF PLAINTIFF**

## **Table of Contents**

TABLE OF AUTHORITIES ......................................................................................i

INTRODUCTION ...................................................................................................1

IDENTITY AND INTEREST OF AMICUS CURIAE ........................................1

ARGUMENT ...........................................................................................................2

  1)   KENTUCKY LEGISLATIVE AND JUDICIAL HISTORY SUPPORTS
       FEDERAL PREEMPTION OF A COUNTY "RIGHT-TO-WORK"
       ORDINANCE ..............................................................................................2

       a.   Federal and State Legislative History ................................................2

       b.   Kentucky Counties Enacted "Right-to-Work" Ordinances Despite
            Federal Preemption ............................................................................4

  2)   WHY "RIGHT-TO-WORK" IS WRONG FOR KENTUCKY FAMILIES ......5

       a.   Kentucky Will Lose Its Middle Class ..................................................5

       b.   "Right-to-Work" States Shed Jobs, Not Gain Them ...........................6

CONCLUSION .......................................................................................................7

CERTIFICATE OF SERVICE .............................................................................7

**<u>Table of Authorities</u>**

CASES

*Ky. State AFL-CIO v. Puckett*, 391 S.W.2d 360 (Ky. 1965)  .................................3

STATUTES

29 U.S.C. §164(b)  ..........................................................................................3

OTHER AUTHORITIES
*Assets & Opportunity Scorecard*, Corporation for Enterprise Development (2015),
http://assetsandopportunity.org/scorecard/  ......................................................5

Bruce Feldacker, *Labor Guide to Labor Law,* 1 (4th ed. 2000).
*Middle Class in America*, Institute for Research on Poverty, Vol. 27, No. 1 (2010),
http://www.irp.wisc.edu/publications/focus/pdfs/foc271a.pdf ............................2, 3

John E. Higgins, Jr., *The Developing Labor Law, Vol. 1,* 28 (6th ed. 2012) .......................3

Raymond L. Hogler et al., Colorado State Univ., *Do Right-To-Work Laws Matter? : Explaining the Variation In Union Density* (2003) ..................................................5, 6

*Ky. St. & Cty. QuickFacts*, U.S. Census Bureau (2015),
http://quickfacts.census.gov/qfd/states/21000.html ...........................................6

Gordon Lafer & Sylvia Allegretto, *Does "Right-to-Work: Create Jobs? Answers from Oklahoma*, Econ. Policy Inst., Mar. 1, 2011,
http://www.irle.berkeley.edu/cwed/wp/right_to_work.pdf .................................6

National Right to Work Committee, http://nrtwc.org (last visited April 17, 2015) .............5

SB 1, 15RS, House Labor and Industry Comm. (Feb. 12, 2015)  ........................................4

Heidi Shierholz & Elise Gould, *The Comp. Penalty of 'Right-to-Work' Laws*, Econ. Policy Inst., Feb. 17, 2011, http://www.epi.org/publication/bp299/  ..........................................5

U.S. Department of Labor, Bureau of Labor Statistics, *Economic News Release: Table 5. Union Affiliation of Employed Wage and Salary Workers by State* (2015),
http://www.bls.gov/news.release/union2.t05.htm ..............................................6

Lindsay VanHulle, *Right To Work One Year Later: Not Much Has Changed*, WZZM 13, Dec. 8, 2013, http://archive.wzzm13.com/news/article/275270/14/Right-to-work-one-year-later-not-much-has-changed .........................................................6

"Whether a Local Government May Enact a Right-to-Work Ordinance," Ky. O.A.G. 14-007, p. 5 (Dec. 18, 2014)  ...........................................................................4

## Introduction

This case arises from a dispute between the Plaintiffs, United Automobile, Aerospace and Agricultural Implement Workers of America Local 3047, et al. and the Defendants, Hardin County, Kentucky, et al., as to whether the National Labor Relations Act, as amended, ("NLRA") preempts §§4 and 5 of Hardin County Ordinance No. 300, Series 2014.

A finding for the Defendants will result in significantly lower wages and diminished workplace protections Kentucky's working families. *Amicus Curiae*, the Kentucky State AFL-CIO, respectfully requests on behalf of the working families of Kentucky that the Court upholds the principles of the NLRA and declare §§4 and 5 of the Hardin County Ordinance void.

## Identity and Interest of Amicus Curiae

The Kentucky Chapter of the American Federation of Labor, Congress of Industrial Organizations ("Kentucky State AFL-CIO") is an unincorporated federation of labor unions based in Frankfort, Kentucky and originally chartered in 1905. The Kentucky State AFL-CIO is comprised of over fifty labor organizations and unions in Kentucky, which together represent the interests of over 100,000 working men and women throughout the Commonwealth. The Kentucky State AFL-CIO advocates for the interests of its members' constituents, as well as for the general interests of the Kentucky workforce. The organization is dedicated to improving the lives of working families, bringing fairness and dignity to the workplace, and securing social equity in the Nation.

1

The Kentucky State AFL-CIO requests leave of authority to file as Amicus Curiae under the attached Motion for Leave to File Brief *Amicus Curiae*.[1]

### Argument

*"United We Stand. Divided We Fall." – the Kentucky State Motto.*

"Right-to-Work" is wrong for Kentucky families. If the Court upholds county "right-to-work" ordinances in Kentucky, the ruling will impact hundreds of thousands of Kentuckians by depressing wages and cutting benefits for workers and their families. Studies show that "right-to-work" laws undermine average workers by decreasing the effectiveness of unions in these locales. The state legislature, as the representative of the people, has never passed a "right-to-work" law, though proponents have repeatedly tried.  In fact "right-to-work" has been introduced and rejected numerous times in the last ten years by the Kentucky General Assembly. The Court should uphold this legislative intent in the present case.

1) **Legislative and Judicial History of the National Labor Relations Act Supports Federal Preemption of a County "Right-to-Work" Ordinance.**

   a) **Federal and State Legislative History.**

Workers have been organizing in the workplace for longer than our Constitution has been in existence. Bruce Feldacker, *Labor Guide to Labor Law,* 1 (4th ed. 2000). One does not need to be a history scholar to know that for hundreds of years workers and employers have been engaged in a long-standing struggle between rights and profits. The federal government made great strides in harmonizing the relationship between workers and employers when it passed the National Labor Relations Act. *Id*. at 3. The National

---

[1] Counsel for the Kentucky State AFL-CIO, David O'Brien Suetholz and Devon N.R. Oser, authored the brief in part.

Labor Relations Act harmonized industrial strife by removing any burdens or obstructions of commerce that existed between workers and employers. John E. Higgins, Jr., *The Developing Labor Law, Vol. 1,* 28 (6th ed. 2012).

Less than ten years later, the Taft-Hartley Act amended many of the protections for employees that the National Labor Relations Act had put in place. *Id*. at 4. Importantly, §14(b) of the Taft-Hartley Act ("§14(b)) authorized states and territories to adopt "right-to-work" laws. 29 U.S.C. §164(b).[2] "Right-to-work" laws prohibit union security agreements that ensure that employees bear their fair share of the union's costs of representation. Feldacker, *supra* at 448.

From a legislative perspective, §14(b) only allows states and territories to enact "right-to-work" laws because allowing counties to enact these ordinances would not further the original intent of the National Labor Relations Act – harmony between workers and employers. In Kentucky, for example, unions frequently represent members in more than one county. If one county enacts a "right-to-work" ordinance and another county does not, then unions and employers will be forced to renegotiate contracts depending on the county that has jurisdiction. Such a result directly contradicts the legislative intent behind federal regulation of labor relations within the workplace.

Kentucky courts have also recognized that the Taft-Hartley Act delegates to state legislatures and territories the power to enact "right-to-work" laws. *Ky. State AFL-CIO v. Puckett*, 391 S.W.2d 360 (Ky. 1965). Additionally, the Kentucky executive branch recognizes these legislative powers. Kentucky's highest-ranking attorney, Attorney General Jack Conway, has unequivocally stated that local governments have no power to enact

---

[2] The Kentucky State AFL-CIO adopts the reasoning cited in the Plaintiff's Motion for Summary Judgment regarding §14(b).

"right-to-work" ordinances. "Whether a Local Government May Enact a Right-to-Work Ordinance," Ky. O.A.G. 14-007, p. 5 (Dec. 18, 2014). The Kentucky legislature has never enacted a statewide "right-to-work law." In fact, the House of Representatives Labor and Employment Committee voted against a "right-to-work" bill as recently as February 12, 2015. SB 1, 15RS, House Labor and Industry Comm. (Feb. 12, 2015).

### b) Kentucky Counties Enacted "Right-to-Work" Ordinances Despite Federal Preemption.

On December 19, 2014 in contravention of sixty-eight (68) years of established precedent the Warren County Fiscal Court became the first county in the country to enact a "right-to-work" ordinance. Eleven other Kentucky counties have followed suit and passed their own ordinances that are nearly identical to the Warren County ordinance.[3] Many counties grounded their legal justification in the opinion of Warren County Attorney Amy Milliken.[4]

Workers throughout Kentucky have turned out in droves to educate others about a law that threatens their livelihoods. Through these grassroots efforts, members of the Kentucky State AFL-CIO have reached out to sixty-seven counties that have confirmed that they will follow federal law and not enact right-to-work ordinances.[5] Ironically, the Plaintiffs' and Kentucky State AFL-CIO's argument that counties do not have the author-

---

[3] Boone, Butler, Cumberland, Fulton, Hardin, Logan, Monroe, Rockcastle, Simpson, Todd, and Whitley Counties have all passed local right-to-work ordinances as of the filing of this brief.

[4] Attached hereto as Exhibit 1.

[5] The counties in alphabetical order are as follows: Barren, Clark, Ohio, Pulaski, Allen, Ballard, Bath, Boyd, Boyle, Bracken, Breckinridge, Bullitt, Caldwell, Carlisle, Carter, Crittenden, Daviess, Edmonson, Elliott, Fleming, Floyd, Franklin, Gallatin, Garrard, Grant, Green, Greenup, Hancock, Harlan, Hart, Henderson, Henry, Hopkins, Jackson, Jefferson, Knott, Knox, Larue, Laurel, Lawrence, Letcher, Lincoln, Madison, Magoffin, Marion, Marshall, Mason, McLean, McCracken, Meade, Menifee, Muhlenberg, Nicholas, Oldham, Owsley, Pendleton, Pike, Robertson, Rogers, Rowan, Russell, Scott, Spencer, Taylor, Trigg, Washington, Wolfe, and Woodford.

ity to pass "right to work" ordinances are harmonious with the National Right to Work Committee, a historic foe of organized labor.[6]

**2)   Why Right-to-Work is Wrong for Kentucky Families.**

     **a.   Kentucky Will Lose its Middle Class.**

The 100,000 members of the Kentucky State AFL-CIO have a reason to be concerned about "right-to-work laws." A strong middle class is the backbone of democracy, and "right-to-work" laws negate the principles upon which a strong middle class is built.[7]

First, "right-to-work" laws depress wages and benefits for workers. A worker in a "right-to-work" state makes an average of $1,500 less per year and has lower rates of health insurance and pension coverage than a similarly situated worker in other states. Heidi Shierholz & Elise Gould, *The Comp. Penalty of 'Right-to-Work' Laws*, Econ. Policy Inst., Feb. 17, 2011, http://www.epi.org/publication/bp299/. Additionally, nine of the top ten worst states for financial security are "right-to-work" states. *Assets & Opportunity Scorecard*, Corp. for Enterprise Dev. (2015), http://assetsandopportunity.org/scorecard/.

Second, "right-to-work" laws are directly related to a decrease in union jobs. As Ray Hogler noted in his study on unions, "right-to-work laws are clearly and significantly related to lower union density." Raymond L. Hogler et al., Colorado State Univ., *Do Right-To-Work Laws Matter? : Explaining the Variation In Union Density* (2003).

On average, union workers' wages are $200 higher than non-union workers' weekly wages, 79 percent of union members have job-provided health insurance, and women who join unions earn an average of $222 more per week than women who do not

---

[6] National Right to Work Committee, http://nrtwc.org (last visited April 17, 2015).

[7] Studies at the University of Wisconsin show that some of the defining characteristics of middle class families include aspiring to financial goals like homeownership as well as health and retirement security. *Middle Class in America*, Institute for Research on Poverty, Vol. 27, No. 1 (2010), http://www.irp.wisc.edu/publications/focus/pdfs/foc271a.pdf.

join unions. Exhibit 2. It's no wonder then that unions represent 12.8 % of Kentucky's population.[8] U.S. Department of Labor, Bureau of Labor Statistics, *Economic News Release: Table 5. Union Affiliation of Employed Wage and Salary Workers by State* (2015), http://www.bls.gov/news.release/union2.t05.htm.

### b.  <u>Right-to-Work States Shed Jobs, Not Gain Them.</u>

Kentucky cannot afford to lose jobs. The Commonwealth's median household income is $10,000 lower than the median United States household, and the median income per capita is almost $5,000 lower. *Ky. St. & Cty. QuickFacts*, U.S. Census Bureau (2015), http://quickfacts.census.gov/qfd/states/21000.html. While many may argue that "right-to-work laws" improve the economy, an examination of states that have passed "right-to-work laws" says otherwise.

State legislatures that pass "right-to-work" laws do not boost economic growth for their constituents. Hogler*, supra*. For example, one year after the Michigan legislature passed a "right-to-work" law, a reporter could not locate any businesses that had moved to Michigan as a result of the new legislation. Lindsay VanHulle, *Right To Work One Year Later: Not Much Has Changed*, WZZM 13, Dec. 8, 2013, http://archive.wzzm13.com/news/article/275270/14/Right-to-work-one-year-later-not-much-has-changed. In Oklahoma, which passed its "right-to-work" law in 2001, manufacturing jobs have reached their lowest level in 20 years. Gordon Lafer & Sylvia Allegretto, *Does "Right-to-Work: Create Jobs? Answers from Oklahoma*, Econ. Policy Inst., Mar. 1, 2011, http://www.irle.berkeley.edu/cwed/wp/right_to_work.pdf.

---

[8] In 2014, the Bureau of Labor Statistics found that in addition to Kentucky's 189,000 union members, another 30,000 Kentucky workers have union representation on the job.

**Conclusion**

In conclusion, the case at hand requires a decision that affects the lives of hundreds of thousands of working Kentuckians. We respectfully ask the Court to declare §§4 and 5 of the Hardin County Ordinance No. 300, Series 2014 void.

Respectfully submitted,

/s/David O'Brien Suetholz_____
David O'Brien Suetholz
Devon N.R. Oser
Kircher, Suetholz & Grayson PSC
515 Park Avenue
Louisville, Kentucky 40208
Tel: (502) 636-4333
Counsel for Amicus Curiae Kentucky Chapter of American Federation of Labor and Congress of Industrial Organizations (AFL-CIO)

**Certificate of Service**

It is hereby certified that a copy of the foregoing has on this 17th day of April, 2015, been served through this Court's CM/ECF system on the following persons:

Irwin H. Cutler, Jr.
E-mail: cutler@pcnmlaw.com

Robert M. Colone
E-mail: rmcolone@teamsters89.com

Jason M. Nemes, Esq.
E-mail: jnemes@fmhd.com

John T. Lovett, Esq.
E-mail: jlovett@fbtlaw.com

It is further certified that a copy of the foregoing was this 17th day of April, 2015, emailed to:

Jennifer B. Oldham, Esq.
Jennyo.hcao@hcky.org