UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED AUTOMOBILE, AEROSPACE      )
AND AGRICULTURAL IMPLEMENT        )
WORKERS OF AMERICA LOCAL 3047, et )
al.,                              )
                                  )
              Plaintiffs,         )        **Electronically Filed**
                                  )
        v.                        )        CASE NO. 3:15-cv-00066-DJH
                                  )
HARDIN COUNTY, KENTUCKY, et al.,  )
                                  )
              Defendants.         )

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
SUMMARY JUDGMENT MOTION**

Defendants, by counsel, respectfully reply to the Plaintiffs' Response to Defendants'

Motion for Summary Judgment.

**I.    NLRA § 14(b) Authorizes Local RTW Laws Through Its Authorization of "State"
        RTW Laws.**

> "The exclusion of political subdivisions cannot be inferred from
> the express authorization to the States because political
> subdivisions are components of the very entity the statute
> empowers."  *City of Columbus v. Ours Garage and Wrecker
> Service, Inc.*, 536 U.S. 424, 433 (2002); *Wisconsin Public
> Intervenor v. Mortier*, 501 U.S. 597, 607-608 (1991).

Plaintiffs rest their case on the assumption that "(r)ight to work laws that are not

encompassed under the National Labor Relations Act, § 14(b) are preempted by the Act."

*Quoting* Plaintiffs' Joint Reply/Response, p. 1.  This suggests that the NLRA elsewhere preempts

"right to work" ("RTW") laws. It does not. Nevertheless, Plaintiffs' reliance on Section 14(b)

may be the most helpful place to begin. This is because the NLRA would not preempt Ordinance

300, **even if** Section 14(b) provided the only exception to federal preemption of "right to work" laws.

Section 14 of the NLRA is entitled, "Construction of Provisions." Its subsection (b) provides:

> "(b) Nothing in this Act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law." 29 U.S.C. § 164(b).

Plaintiffs' whole argument depends upon reading Section 14(b)'s reference to "State" and "State law" as excluding, rather than including, States' political subdivisions, like Hardin County. Plaintiffs' argument fails because this is not how federal preemption applies to political subdivisions, like Hardin County.

The U.S. Supreme Court has addressed how political subdivisions of the States are to be treated for preemption purposes:

> "It is, finally, axiomatic that 'for the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws.'"*Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 605 (1991)

Congress **can** choose to authorize state action while preempting local action. Yet, courts may not conclude that Congress intended to separate the authority of the States from their political subdivisions unless Congress expressed "a 'clear and manifest purpose' to pre-empt local authority." *Wisconsin Public Intervenor v. Mortier*, 501 U.S. at 607; *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. at 433.

Plaintiffs argue that Section 14(b)'s protection of States' authority to adopt RTW laws signals a Congressional intention to preempt local authority to adopt RTW laws. Exactly the opposite is true:

"A locality . . . is a 'political *subdivision'* of the State. Ordinarily, a political subdivision may exercise whatever portion of state power the State, under its own constitution and laws, chooses to delegate to the subdivision. Absent a clear statement to the contrary, Congress' reference to the 'regulatory authority of a State' should be read to <u>preserve, not preempt</u>, the traditional prerogative of the States to delegate their authority to their constituent parts." *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. at 428-9. (italics in original; underlining added)

Section 14(b)'s protection of State authority to enact RTW legislation acts to "preserve, not preempt" Hardin County's authority adopt an RTW ordinance, in order to regulate commerce within the County and promote the County's economic development.

Plaintiffs rely upon Section 14(b)'s reference to "State(s)" and "State law" while remaining silent as to political subdivisions. Yet, the U.S. Supreme Court expressly rejects the conclusion Plaintiffs draw from Section 14(b)'s silence as to local authority. "Mere silence, in this context, cannot suffice to establish a 'clear and manifest purpose' to pre-empt local authority." *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 607 (1991); *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424, 433 (2002).

Plaintiffs erect a "straw man," asserting that Defendants invent a "*per se* rule" that "all statutory references to 'State' or 'State law' encompass local government and local laws." Plaintiffs' Joint Response/Reply, p. 11. Defendants nowhere use this term or advance such an idea.

Defendants do insist, however, because the United States Supreme Court insists, that the burden falls on Plaintiffs. Plaintiffs must point to a "clear statement to the contrary" to escape the conclusion that Section 14(b)'s protection of State authority to adopt RTW laws includes within its scope protection for political subdivisions, like Hardin County, to adopt RTW laws. *Id.* Plaintiffs must demonstrate that Congress expressed "a clear and manifest purpose" to exclude

the States' political subdivisions from Section 14(b).  Otherwise, Section 14(b)'s reference to

"State law," includes within its scope Ordinance 300.


**II.     The NLRA's Language, Statutory Framework, and History Show No "Clear and Manifest Purpose" to Preempt Local RTW Ordinances.**

> "That is one reason why a section, which later became § 14(b), appeared . . . as making clear and unambiguous the purpose of Congress not to preempt the field."  *Retail Clerks International Association, Local 1625, AFL-CIO v. Schermerhorn*, 375 U.S. 96, 100-01 (1963).

The Plaintiffs cannot meet the burden imposed by their own reliance on Section 14(b).

The language, statutory framework, and history of the NLRA offer no evidence of any

Congressional purpose to separate States from their political subdivisions for the purpose of

RTW preemption.  Plaintiffs cite the basic maxim, "the purpose of Congress is the ultimate

touchstone in every preemption case."  Plaintiffs' Joint Reply/Response, p. 12, citing *Medtronic,*

*Inc. v. Lohr,* 51 U.S. 470, 485-86 (1996).  Plaintiffs also acknowledge that Congress' intent

"primarily is discerned from the language of the pre-emption statute and statutory framework

surrounding it."  Plaintiffs Joint Reply/Response, p. 12, citing *Medtronic, Inc. v. Lohr, supra.*

Defendants agree.  Yet, nothing within the language, structure, or history of Section 14(b), or the

rest of the NLRA, establishes a "clear and manifest purpose" to treat political subdivisions

differently for preemption purposes than the States of which they are component parts.

**(a)** **Language and statutory framework of the NLRA shows no "clear and manifest purpose" to exclude local RTW.**

The NLRA contains no express language preventing a State's political subdivisions from adopting RTW laws, or sharing in their State's power to do so. On the contrary, the NLRA restrains only federal law from forbidding union shop. Section 8(a)(3) is the provision of the NLRA addressing compulsory unionism. It states:

> "*Provided*, That nothing in this Act, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein. . . ." (29 U.S.C. § 158(a)(3)); (emphasis added).

Section 8(a)(3) says ***nothing*** that prevents state or local laws from forbidding compulsory unionism. Section 8(a)(3) announces that only federal law will refrain from outlawing union shop. This is exactly how the Supreme Court understood this language. *Algoma Plywood & Veneer Company v. Wisconsin Employment Relations Board,* 336 U.S. 301, 307 (1948).[1] No restrictions are placed on state or local prohibitions against "union shop" by Section 8(a)(3) or any other provision of the NLRA.

Contrast the NLRA's "hands-off" approach on the subject of RTW with the federal FIFRA legislation on pesticide sale and use at issue in *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597 (1991), and the Interstate Commerce Act ("ICA") at issue in *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424 (2002). The FIFRA identified what specific roles States, and in some cases, local governments would play under its statutory scheme. *See, Mortier*, 501 U.S. at 601. The ICA expressly preempted all non-federal legislation

---

[1] "It is argued, therefore, that a State cannot forbid what Section 8(3) affirmatively permits. The short answer is that Section 8(3) merely disclaims a national policy hostile to the closed shop or other forms of union-security agreement. This is the obvious inference to be drawn from the choice of the words 'nothing in this Act . . . or in any other statute of the United States,' and it is confirmed by the legislative history." *Id.* at 307.

on subjects covered by the ICA, except where the ICA authorizes the "States," or in some cases their political subdivisions, to act. *Ours Garage,* 536 U.S. at 429-430. Despite this restrictive language in the FIFRA and the ICA, the Supreme Court found that exceptions from federal preemption applicable to "States," also free their political subdivisions from federal preemption.

The language and structure of Section 14(b) highlights the absence of any Congressional intent to interfere with RTW laws. Section 14(b) is not worded to carve out a "narrow exception" to preemption of RTW laws, as the Response argues. Section 14(b) is located in the portion of the NLRA devoted to "Construction of Provisions." It only announces how the NLRA "shall be construed" in the area of RTW laws. 29 U.S.C. § 164(b). And, the Congressional mandate embodied in Section 14(b) is that "nothing in the Act" shall be constructed as preventing RTW laws. Admittedly, Section 14(b) references "State law." But again, silence as to local law creates no evidence that local law is excluded. "(P)olitical subdivisions are components of the very entity the statute empowers." *City of Columbus*, 536 U.S. at 433.

> *(b)*      ***RTW is an historic "police power," not subject to federal preemption.***

The freedom of RTW laws from federal preemption has its source in the historic "police power" of States to prohibit compulsory unionism. This "police power" has always separated, for preemption purposes, prohibitions against compulsory unionism from other labor relations issues. The U.S. Supreme Court explained in *Railway Emp. Dept. v. Hanson,* 351 U.S. 225, 233 (1956), "(t)here can be no doubt that it is within the police power of a State to prohibit the union or closed shop." The Court cited *Lincoln Federal Labor Union No. 19129 v. Northwestern Iron & Metal Co.*, 335 U.S. 525 (1949)." According to *Lincoln Federal Union,* States have the "police power" to "pass laws clearly designed to safeguard the opportunity of non-union members to get and hold jobs, free from discrimination against them because they are non-union

workers." *Lincoln Federal Labor Union No. 19129 v. Northwestern Iron & Metal Co.,* 335 U.S. 526, 534 (1949).

*Lincoln Federal Union's* description of the nature of the RTW "police power" fits squarely within the authority Kentucky delegated to Hardin and its other Counties in KRS 67.083(3)(m) and (x). The "police power" to prohibit compulsory unionism is a component of a State's "power to legislate against what are found to be injurious practices in their internal commercial and business affairs." *Lincoln Federal Union* 335 U.S. at 536. The Commonwealth of Kentucky delegated to Hardin County authority to engage in the "(r)egulation of commerce for the protection and convenience of the public" within the county's boundaries, as well as the "(p)romotion of economic development of the county." KRS 67.083(3)(m) and (x). Hardin County adopted Ordinance 300 to address what the County determined to be "injurious practices" to the County's "internal commercial and business affairs." *Cf. Lincoln Federal Union* 335 U.S. at 536.

RTW "police powers" are not the only State "police powers" excluded from NLRA preemption. Federal preemption of even core labor matters, like strikes and picketing, stop short of overriding state and local "police powers" to insure free ingress and egress to an employer's property, prevent violence, and avoid "mass" picketing. *See e.g. Youngdahl v. Rainfair, Inc*., 355 U.S. 131, 138-9 (1957); *UAW v. Wisconsin Employment Relations Board*, 351 U.S. 266, 274-5 (1955) (NLRA preemption of regulation of strike picket-line conduct does not preempt state "police powers" to enjoin unlawful picketing: blocking ingress/egress, mass picketing, violence, etc.).

Courts are especially reluctant to find that a federal statute preempts state or local "police powers." *See, e.g. Medtronic, Inc. v. Lohr,* 51 U.S. 470, 485-86 (1996) ("we used a 'presumption

against the pre-emption of state police power regulations.'") *Hillsborough County, Fla. v. Automated Medical Labs,* 471 U.S. 707, 715 (1985)("we start with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress").   This reluctance transfers fully when a State delegates one or more of its "police powers" to its political subdivisions.   *Wisconsin Public Intervenor v. Mortier*, 501 U.S. at 605 (local exercise of "historic police power of State" not preempted absent expression of "clear and manifest purpose of Congress"); *City of Columbus,* 506 U.S. at 432-3, ("historic police power of State" not preempted when exercised by "local governmental units . . . created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them in its absolute discretion.").

The central issue raised in Plaintiffs' Response is whether Section 14(b) of the NLRA acts to preempt Ordinance 300 or preserve it.   The U.S. Supreme Court set out the test for answering this question in *City of Columbus* and *Mortier*.   There is no Congressional expression of any "clear and manifest purpose" to preempt political subdivisions from adopting RTW laws, while permitting the States to do so. Therefore, Section 14(b)'s safeguard of State authority to adopt RTW laws applies equality to their political subdivisions.

### (c)   The NLRA Shows No Congressional Desire for Uniformity in RTW Law.

Plaintiffs' Response points to Congress' desire for uniformity in RTW laws under the Railway Labor Act (RLA).   Plaintiffs' Joint Response/Reply, p. 8.   Nevertheless, contrast Congress' treatment of RTW under the RLA with its treatment of RTW under the NLRA.   The Railway Labor Act governs labor relations issues involving railroads and airlines.   42 U.S.C. § 152.   "Union shop" has always been an "all or nothing" issue under the RLA.   Beginning in 1934, the RLA forbid all union shop agreements in an effort to ensure truly voluntary union

membership. In 1952, however, Congress amended the RLA to authorize union shop agreements. Unlike Section 8(a)(3) of the NLRA, however, the Railway Labor Act specifically preempted not only other federal law, but the law of "any State" from outlawing union security agreements. RLA Section 11 states:

> "Notwithstanding any other provisions of this Chapter, or of any other statute or law of the United States, <u>or Territory thereof, or of any State,</u> any carrier or carriers . . . and a labor organization . . . shall be permitted (a) to make agreements, requiring, as a condition of continued employment . . . all employees shall become members of the labor organization representing their craft or class." 42 U.S.C. § 152, 11th. (Emphasis added)

In short, the RLA creates a federal preemption of RTW laws that is wholly absent from the the the language of the NLRA. Why does Section 8(a)(3) of the NLRA not read like the Eleventh Section of the RLA? The reason is the NLRA never preempted RTW laws. It permits union shop, but it does not restrict any other level of government from preventing compulsory unionism within their boundaries. Congress' intent in fashioning the NLRA's treatment of RTW was to "abandon any search for uniformity . . . and decided to suffer a medley of attitudes and philosophies on the subject. *Retail Clerks International Ass'n v. Schermerhorn*, 375 U.S. 96, 104-105 (1963).

## III. CONCLUSION.

Plaintiffs' Response throws against Ordinance 300 every variety of federal preemption that applies to a labor matter <u>other than RTW</u>. This cannot camouflage the fact that nothing within the NLRA sets forth a "clear and manifest purpose" to preempt local RTW ordinances, while permitting State RTW laws. To support a separation between state and local law, however, Plaintiffs must point to a "clear and manifest purpose" to preempt local RTW laws. Plaintiffs do not, and cannot, meet this burden.

For this and the other reasons set forth in Hardin County's other memoranda to this Court, Plaintiffs' challenge to Ordinance 300 fails. Hardin County is entitled to summary judgment as a matter of law.

Respectfully submitted,

/s/ John T. Lovett
John T. Lovett
jlovett@fbtlaw.com
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
Telephone: (502) 589-5400
Facsimile: (502) 581-1087

Jason Michael Nemes
jnemes@fmhd.com
FULTZ MADDOX HOVIOUS & DICKENS
101 South Fifth Street, 27th Floor
Louisville, KY 40202
Telephone: (502) 992-5045
Facsimile: (502) 588-2020

Jennifer B. Oldham
jennyo.hcao@hcky.org
Hardin County Attorney
109 E. Dixie Avenue
Elizabethtown, KY 42701-1408
Telephone: (270) 765-6726
Facsimile: (270) 737-0087

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of May, 2015, I electronically filed the foregoing Reply Brief  with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: John T. Lovett (jlovett@fbtlaw.com); James Michael Nemes (jnemes@fmhd.com); Jennifer B. Oldham (jennyo.hcao@hcky.org); Irwin H. Cutler, Jr. (cutler@pcnmlaw.com); David Leightty (dleightty@earthlink.net); Benjamin S. Basil (basil@pcnmlaw.com); and Robert M. Colone (rmcolone@teamsters89.com).


/s/ John T. Lovett
*Counsel for Defendants*


0130958.0624725  4850-7038-8259v2